IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LINDSAY M. B.,<br><br>    Plaintiff,<br><br>v.<br><br>MARTIN J. O'MALLEY,[1]<br>Commissioner of Social Security,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 23-CV-00006-SH |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Lindsay M. B. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin J. O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff applied for Title II disability benefits on April 24, 2019.  (R. 172-75.)  In her application, Plaintiff alleged she has been unable to work since April 3, 2019, due to conditions including lupus nephritis, systemic lupus erythematosus ("SLE"), osteochondral dissecans, insomnia, anxiety, anemia, nausea, and joint swelling.  (R. 172, 201.)  Plaintiff was 29 years old at the time of the Administrative Law Judge's ("ALJ") decision.  (R. 39, 172.)  Plaintiff has a college degree and no past relevant work.  (R. 202, 67.)

Plaintiff's claim was denied initially and upon reconsideration.  (R. 107-10, 112-17.)  Plaintiff then requested and received a hearing before an ALJ.  (R. 119-20, 46-70.)  The ALJ denied benefits and found Plaintiff not disabled.  (R. 24-39.)  The Appeals Council denied review on November 2, 2022 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981.  Plaintiff now appeals.

## III.    The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through March 31, 2023.  (R. 27.)  The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (*Id.*)  At step

two, the ALJ found Plaintiff to have the severe impairment of lupus. (R. 27-28.) At step three, the ALJ found Plaintiff's impairment did not met or equal a listed impairment. (R. 28-29.)

The ALJ concluded Plaintiff had the RFC to perform light work with additional limitations and provided a recitation of the evidence that went into this finding. (R. 29-37.) At step four, the ALJ found Plaintiff had no past relevant work. (R. 37.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as Cashier II, Furniture Rental Clerk, and Mail Clerk. (R. 37-38.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 38-39.)

## IV.   Issues

Plaintiff asserts a single error on appeal, arguing the ALJ's evaluation of her rheumatologist's opinion failed to comply with the requirements of 20 C.F.R. § 404.1520c. (ECF No. 9 at 6-12.) The Court agrees that the ALJ failed to properly articulate how he evaluated the opinion's supportability and consistency and finds remand is required.

## V.   Analysis

### A.   Medical Opinions—Generally

A medical opinion is a statement from a medical source about what a claimant can still do despite their impairment and whether they have one or more impairment-related limitations or restrictions in their abilities to perform the physical, mental, or other demands of work activities, or in their ability to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). When considering a medical opinion, an ALJ does not defer or give it any specific evidentiary weight. *Id.* § 404.1520c(a). Instead, the ALJ evaluates the

"persuasiveness" of the opinion by considering five factors—(1) the supportability of the opinion; (2) the consistency of the opinion; (3) the medical source's relationship with the claimant;[2] (4) the medical source's specialization; and (5) any other factors that tend to support or contradict the opinion. *Id.* § 404.1520c(a) & (c). Of those five factors, the ALJ must always <u>explain</u> how he considered only the first two "most important factors"—supportability and consistency. *Id.* § 404.1520c(b)(2). The other factors still must be considered, but the ALJ need only discuss them if there are two or more differing medical opinions about the same issue that are equally well-supported and consistent with the record. *Id.* § 404.1520c(b)(3) (even then, the ALJ only discusses the "most persuasive" factors).

### 1. Supportability

Regarding factors the ALJ must always explain, supportability is internal to the medical source and is focused on the relevancy of the evidence and explanations supplied by that medical source. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

### 2. Consistency

Consistency, meanwhile, is more external. Under the plain language of the regulation, this evaluation looks to evidence from "other" medical and nonmedical sources. "The more consistent a medical opinion(s) or prior administrative medical

---

[2] The "relationship" consideration combines multiple subfactors, including the length, purpose, and extent of the treatment relationship; the frequency of examinations; and whether the medical source examined the patient or merely reviewed her file. 20 C.F.R. § 404.1520c(c)(3).

finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

However, the Social Security Administration (the "Administration") has interpreted the consistency analysis to also include an evaluation of whether there are "internal conflicts within the evidence from the same source." *Evaluating Med'l Opinions and Prior Admin. Med'l Findings–Claims Filed on or after Mar. 27, 2017*, Program Operations Manual System ("POMS"), DI 24503.025(E)(2); *see also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5854 (Jan. 18, 2017).[3] This is in line with how the Administration views consistency in relation to evidence in general. *See* 20 C.F.R. § 404.1520b(b).[4]

In enacting this regulation, the Administration noted that the "appropriate level of articulation will necessarily depend on the unique circumstances of each claim." 82 Fed. Reg. at 5854. Still, given the plain language of the regulation, the Court finds that—at a minimum—it must include a comparison to evidence from "other" medical and nonmedical sources, when such evidence is available.

---

[3] "[P]roposed and final 404.1520c and 416.920c explain that the more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative medical finding is.

Moreover, our use of the word 'consistent' in the regulations is the same as the plain language and common definition of 'consistent.' This includes consideration of factors such as whether the evidence conflicts with other evidence from other medical sources and whether it contains an internal conflict with evidence from the same medical source." 82 Fed. Reg. at 5854.

[4] "We consider evidence to be inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." 20 C.F.R. § 404.1520b(b).

### B. The Medical Opinion in This Case

Plaintiff's arguments center on the opinion of her rheumatologist, Alan Martin, M.D. (ECF No. 9.) Dr. Martin treated Plaintiff for her lupus symptoms throughout the relevant period. (*See, e.g.*, 404-27, 458-90, 579-82.) On March 1, 2022, Dr. Martin offered a two-page "medical statement" regarding Plaintiff's lupus. (R. 655-56.) The statement included an explanation of how her diagnosis was established. (R. 655.) It then answered questions regarding the extra-articular manifestations of lupus in Plaintiff's case; her constitutional symptoms; her history and current experience with joint pain, swelling, and tenderness; whether she had an inability to ambulate effectively or to perform fine and gross movements effectively; and whether she was on long-term steroid therapy. (R. 655-56.) The statement went on to offer a "medical opinion" as to whether Plaintiff had a certain set of listed limitations and abilities—and to what extent she had them—followed by further comments from Dr. Martin. (R. 656.) Relevant to this case, Dr. Martin offered opinions regarding Plaintiff's abilities to stand, sit, lift, and work that were substantially more restrictive than the RFC reached by the ALJ. (*Compare* R. 656 *with* R. 29.)

In his decision, the ALJ discussed Plaintiff's history of treatment with Dr. Martin throughout the determination of her RFC, alongside notes from her other treatment providers. (R. 31-35.) The ALJ then turned to his evaluation of the prior administrative medical findings and, finally, Dr. Martin's opinion. (R. 35-36.) After summarizing the observations and opinions in Dr. Martin's medical statement, the ALJ concluded as follows:

> Dr. Martin's opinion that the claimant could only work 4 hours in a day is not persuasive or consistent with the evidence. Dr. Martin's treatment notes show normal musculoskeletal findings and state the claimant was

7

doing well with lupus that was 'stable' (Exhibits 4F, 9F, and 13F).[5]  This is also not consistent with his other limitations and the undersigned rejects them.

(R. 36.)

### 1.    The ALJ's Supportability Analysis

As Plaintiff argues, in finding Dr. Martin's opinion "not persuasive," the ALJ made no attempt to explain how he considered its supportability—that is, how he evaluated the relevance of the objective medical evidence and supporting explanations presented by Dr. Martin.  *See* 20 C.F.R. § 404.1520c(c)(1).

The Commissioner points to the ALJ's summary of Dr. Martin's medical statement and his comparison of Dr. Martin's opinion with his own prior treatment notes as evidence of a supportability analysis.  (ECF No. 13 at 8.)  Indeed, this Court often credits an ALJ for his consideration of evidence internal to a medical source, regardless of whether the magic word "supportability" is used, which is consistent with case law.  *See, e.g.*, *Shirley v. Comm'r*, No. 3:21-CV-00455, 2022 WL 3083702, at *6 (M.D. Pa. Aug. 3, 2022) ("an ALJ is not required to 'chant every single magic word correctly [in] an otherwise thorough and well-reasoned opinion'" (quoting *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200 (3d Cir. 2019)) (collecting cases).  The Court generally looks to whether an ALJ's explanation of how he evaluated supportability (or consistency) complies with the <u>substance</u> of the regulation.

---

[5] Exhibit 4F, 9F, and 13F contained Plaintiff's treatment notes from Dr. Martin's practice—Tulsa Bone and Joint—from June 26, 2017, to January 9, 2020; April 9, 2020, to March 10, 2021; and October 4, 2021, to January 12, 2022, respectively.  (R. 340-433, 451-94, 579-83.)  The ALJ discussed those treatment notes earlier in his decision.  (*See* R. 31-35.)

Here, however, the Court also takes into account the Administration's own position that "internal conflicts within the evidence from the same source" are part of the consistency analysis. POMS, DI 24503.025(E)(2). As such, it appears the only <u>explanation</u> the ALJ offered for finding Dr. Martin's opinion "not persuasive" was an explanation of how the ALJ evaluated its consistency.[6] The ALJ never explained how he considered the supportability of Dr. Martin's opinion.

More importantly, in this case, it is not determinative whether the Court characterizes the ALJ's evaluation as one of "internal conflicts" (i.e., consistency) or one of supportability. As discussed below, the ALJ omitted the essential part of any consistency analysis—an evaluation of how consistent the medical opinion is with the evidence from other medical sources and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). As such, regardless of whether the ALJ's explanation was about supportability or internal conflicts (consistency), it was still an inadequate explanation.

---

[6] The Court does not credit the Commissioner's arguments that point to various places where the ALJ <u>considered</u> particular evidence without any explanation as to <u>how</u> that evidence related to his analysis of the persuasiveness of Dr. Martin's opinion. (ECF No. 13 at 8-9.) There are many situations where the mere fact that the ALJ mentioned evidence can be determinative. *See, e.g.*, *Brandy D. S. C. v. Kijakazi*, No. 20-CV-00575-SH, 2022 WL 834959, at *4 (N.D. Okla. Mar. 21, 2022) (noting the ALJ considered evidence the plaintiff claimed was ignored). And, other times, when the ALJ has clearly considered evidence (e.g., because he or she mentioned it) <u>and</u> the Court can follow the ALJ's reasoning explaining how the evidence was evaluated, the Court may find an ALJ has done all that was required. *Mitchell B. v. Kijakazi*, No. 22-CV-00077-SH, 2023 WL 5165574, at *4 (N.D. Okla. Aug. 11, 2023) (finding the ALJ adequately considered a plaintiff's daily activities). Here, however, the question is not just whether the ALJ considered certain evidence, the question is whether the ALJ actually used that evidence to evaluate the supportability of a medical opinion—or, more accurately, if the ALJ conducted such an evaluation, whether he explained how he did it. Here, the ALJ did not offer such an explanation, and the Court cannot follow the ALJ's reasoning and parse one out from the context of his decision.

### 2. The ALJ's Consistency Analysis

As noted above, the Court credits the ALJ's own statement that—in evaluating the consistency of the opinion—he looked at how it internally conflicted with Dr. Martin's own, prior treatment notes. (R. 36.) By relying solely on this internal inconsistency to discount the opinion, however, the ALJ failed to do what the regulation explicitly requires—explain how consistent Dr. Martin's opinion was with the other medical and nonmedical sources in the claim. 20 C.F.R. § 404.1520c(c)(2). The ALJ made no such comparison, and his explanation of the consistency analysis was, therefore, inadequate.

Nor does the Court does find this error cured, for example, by the ALJ's analysis of the prior administrative medical findings as the Commissioner argues. (ECF No. 13 at 9.) The regulations specifically require a "[s]ource-level articulation." 20 C.F.R. § 404.1520c(b)(1). That is, the Administration has determined that "it is not administratively feasible for us to articulate in each . . . decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings" in a case record. *Id.* So, the Administration has decided to draw the line at a higher level of review. It did not, however, draw that line as high up as the Commissioner would like— merely requiring a unitary review of all medical opinions and findings.

Instead, the Administration settled on somewhere in between. "[W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis . . . ." *Id.* As such, the ALJ was required to evaluate the prior administrative medical findings of Charles Murphy, M.D. (*see generally* R. 73-83); then the findings of William Spence, M.D. (*see generally* R. 86-102); and then the medical opinion of Dr. Martin (*see generally* R. 655-56). The

Court cannot simply find that the discussion of one opinion obviates the need for an adequate discussion of the others.

Even so, there are perhaps situations where the nature of an ALJ's discussion of one opinion (or administrative finding) would make it clear why the ALJ considered another to be inconsistent with evidence in the record. But not here. In explaining how he determined the findings of Drs. Murphy and Spence to be "persuasive," the ALJ stated, in total:

> The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: State agency medical consultants Charles Murphy, MD (Exhibit 2A) and William Spence, MD (Exhibit 4A) opined the claimant could perform a full range of light work. The undersigned finds these opinions persuasive and consistent with the evidence; however, the undersigned added the above postural limitations given her records for treatment of right knee pain.

(R. 35.) While Plaintiff chose not to raise an error in this evaluation, the Court can discern next to nothing about the ALJ's reasoning as to the findings of Drs. Murphy and Spence, much less how this affected his analysis of Dr. Martin's opinions. The ALJ did not explain, and this Court cannot discern, how the ALJ evaluated the consistency of Dr. Martin's opinions with the evidence from other sources.

The Commissioner also focuses on other evidence indicating that Plaintiff may, in fact, not be disabled. (*E.g.,* ECF No. 13 at 1, 9 (Dr. Martin's records, the discounting of Plaintiff's subjective complaints).) And, there may have been many reasons that would have supported the ALJ's rejection of Dr. Martin's opinion if the ALJ had provided them. But, the ALJ's reasoning (if any) is not apparent from the decision, and this Court cannot provide its own rationalization to justify that decision after the fact. *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (The court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's

decision itself."). Therefore, the ALJ failed to properly articulate how he evaluated the consistency of Dr. Martin's opinion.

## VI. Conclusion

The ALJ gave scant explanation for why he rejected the opinion of Dr. Alan Martin. Regardless of whether the Court characterizes the little provided as going toward supportability or "internal conflict," it failed to meet the minimum articulation required by the regulations.

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED AND REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 25th day of March, 2024.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT